UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**YATES RANCH PROPERTY LLP,**
a New Mexico limited liability partnership;
**JAY Land Ltd. Co.,** a New Mexico
limited liability company,

     PLAINTIFFS,

     v.                                      No. 1:23-cv-00496 KWR/GJF

**VILLAGE OF WAGON MOUND,
NEW MEXICO; ANDRES MARTINEZ,
MAYOR, VILLAGE OF WAGON MOUND,**
in his official capacity; **VILLAGE OF
WAGON MOUND COUNCIL; ELDIE R. CRUZ,
COUNCILOR,** in his official capacity;
**ADRIAN A. CLOUTHIER, COUNCILOR,**
in his official capacity; **PAUL A. MIERA,
COUNCILOR,** in his official capacity;
**CLAUDIA M. MARTINEZ, COUNCILOR,**
in her official capacity,

     DEFENDANTS.

## **PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO INTERVENE [Doc. 29]**

Yates Ranch Property LLP and JAY Land Ltd. Co. (collectively, "Plaintiffs"), by and through their counsel, Modrall Sperling Roehl Harris & Sisk, P.A. (Maria O'Brien, Sarah M. Stevenson, and Jamie L. Allen), oppose the Motion to Intervene [Doc. 29] ("Motion") of Harper Cattle, LLC ("Harper"). The Motion does not satisfy the standard to intervene set forth in Federal Rule of Civil Procedure 24(a)(2), the portion of the rule under which Harper seeks to intervene, and it does not include a proposed pleading as required by Rule 24(c). The Motion should be denied.

## I.     Background

Plaintiffs own the Ojo Feliz Ranch in Mora County, New Mexico. The Ranch is a working cattle ranch, and water wells are located throughout the Ranch to provide water to livestock as well as migratory elk and other wildlife. Plaintiffs also own portions of the mineral estate underlying the Ojo Feliz Ranch. In the early 2000s, Plaintiffs entered into a royalty and access agreement with a third party to develop a quarry to remove gravel and other hard minerals from the mineral estate. In 2022, Plaintiffs entered into a similar agreement with a separate entity to remove gravel for a road construction project.

After first passing, in 2022, a resolution expressing opposition to Plaintiffs' quarry on Ojo Feliz Ranch, on March 14, 2023, the Village of Wagon Mound ("Village"), Andres Martinez, the Mayor of the Village of Wagon Mound, the Village of Wagon Mound Council ("Village Council"), Village Councilor Eldie R. Cruz, Village Councilor Adrian A. Clouthier,[1] Village Councilor Paul A. Miera, and Village Councilor Claudia M. Martinez (collectively, "Defendants") adopted Ordinance No. 2023-01, entitled, "An Ordinance Exercising the Village of Wagon Mound's Jurisdiction to Protect the Municipal Water Supply, Santa Clara Spring, and the Village's Water Facilities" ("Ordinance"). The Ordinance purports to create a "Protected Area" around Santa Clara Spring ("Spring"), the Village's water source. The majority of the Protected Area is on Ojo Feliz Ranch, and the goal of the Ordinance is to prevent Plaintiffs from using the quarry or making any use of Ojo Feliz Ranch within the Protected Area.

---

[1] Adrian Clouthier resigned from the Wagon Mound Village Council, and should be replaced as a defendant by Gabriel Maestas, Councilor. *See* Fed. R. Civ. P. 25(d).

As set forth in the Complaint for Declaratory and Injunctive Relief and for Inverse Condemnation [Doc. 1] ("Complaint"), Plaintiffs initiated this litigation because the Ordinance is unconstitutional, under both the United States and New Mexico constitutions, invalid, and illegal. The Ordinance is void for failing to provide notice of the activities which subject an actor to criminal sanctions. It violates due process by targeting heretofore lawful activities on Plaintiffs' real property, without providing any process either before enactment of the Ordinance or pursuant to the Ordinance itself. The Ordinance is an ex post facto law, criminalizing activities that have occurred on the Ranch for decades. Defendants' enactment of the Ordinance exceeded their authority under New Mexico law, and is preempted by New Mexico law governing use of the mineral estate and placement and drilling of water wells. The Complaint requests the Ordinance be declared invalid and unconstitutional, and permanently enjoined, or, alternatively, if the Court upholds the Ordinance, grant Plaintiffs an award of just compensation under New Mexico's inverse condemnation statute.

## II. Legal Standard

Harper seeks to intervene pursuant to Rule 24(a)(2).[2] Motion 1. Rule 24(a)(2) governs intervention of right by

> anyone . . . who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

---

[2] Although Harper did not move for permissive intervention under Rule 24(b), for the reasons set forth in this response, permissive intervention is not warranted as Harper does not meet the burden for permissive intervention or intervention as of right.

Rule 24(c) requires any motion to intervene to "state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought." In addition to meeting the requirements of Rule 24, Harper must establish the Court has subject matter jurisdiction over Harper's claims. *See Town of Chester, N.Y. v. Laroe Ests., Inc.*, 581 U.S. 433, 440 (2017).

### III. Argument

#### A. The Motion is not timely and Harper's intervention is prejudicial to Plaintiffs.

Harper's request to intervene is not timely. While the Motion alleges that Harper sought to intervene "shortly after learning of the existence of the case," Motion 4, the Motion actually indicates that Harper seeks to intervene not after learning about the Complaint—but learning that the Court was ordering a settlement conference, *id.* Plaintiffs' filed their Complaint in early June, more than five months ago, and this litigation was listed as a topic of the Defendants' public meetings since at least June 29, 2023. In light of Harper's knowledge of the litigation, the Motion is not timely. *See Nat'l Ass'n for Advancement of Colored People v. New York*, 413 U.S. 345, 366 (1973) (finding motion to intervene not timely when filed four months after complaint and not reasonable that party seeking intervention was unaware of lawsuit's existence when, among other reasons, it was a topic of "public comment by community leaders").

In addition, the Motion is not timely because intervention for the sole purpose of participating in a settlement conference is prejudicial to Plaintiffs. Plaintiffs and Defendants jointly moved the Court for a stay and a settlement conference, to resolve the claims in the Complaint and the defenses in the Answer. Allowing a third party to intervene at this point and raise new issues regarding water rights and contracts related to water rights complicates the issues identified by the

existing parties for settlement. Granting Harper's Motion will prejudice all existing parties and make settlement less likely.

>  **B.      Harper's water rights are not an interest sufficient to support intervention in this case about a municipal ordinance.**

This lawsuit is about the Village's enactment of an Ordinance, purportedly to protect its water source under NMSA 1978, § 3-27-3(A). Harper, however, does not seek to intervene and challenge or defend the Ordinance. Rather, Harper seeks intervention based on a speculative claim that a potential outcome of *settlement* of this lawsuit will somehow affect Harper's right to use or sell water from the Santa Clara Spring. Motion 1. Harper's personal interest in a water right is not sufficient to support Harper's intervention in this litigation.

Plaintiffs do not dispute Harper owns a portion of the water right that the Village uses to supply its residents and businesses with water under OSE License SP-02682.[3] But this lawsuit is not about the protection of a water right, but of a water source from pollution. NMSA 1978 § 3-27-3(A) extends a municipality's jurisdiction outside of its boundaries "[f]or the purpose of . . . maintaining . . . or protecting its water facilities and *water* from pollution" to cover "(1) all territory occupied by the water facilities; . . . and (3) five miles above the point from which the water is taken." Section 3-27-3(B) allows a municipality to "adopt any ordinance and regulation necessary to carry out the power conferred" by the section. By enacting the Ordinance, the Village is seeking to protect the Spring.

Harper claims its interest in this litigation is its water rights and the "significant economic benefit from [its] ownership of the water rights." Motion 4. These interests, however, are not

---

[3] The Motion refers to the water right Harper claims as License 2682-A. *See* Motion 3. The OSE online records, however, indicate Harper's water right has the number SP-02682.

5

related to the subject matter of this action: the constitutionality and validity of the Ordinance, and its effect on Plaintiffs' right to use their surface and mineral estate. Plaintiffs do not challenge the validity of any water rights that may be present in the Spring, the Village's right to use any water to which it may be entitled, or the Village's authority protect that water source in compliance with Section 3-27-3. And the challenged ordinance and statute under which it was promulgated relate at most to water quality protection – not protection of water rights governed by an entirely different statutory regime than what is at issue here. The Motion does not explain how the validity—or not—of the Ordinance, or any damages awarded to Plaintiffs, affects Harper's "continued ability to enjoy [significant economic] benefits" from its water rights. Motion 4.

Further, these asserted interests are not sufficient to provide Harper with standing to invoke the Court's jurisdiction as an intervenor. The United States Constitution "limits the exercise of the judicial power to 'Cases' and 'Controversies.'" *Town of Chester*, 581 U.S. at 438 (quoting U.S. Const. Art. III, § 2, cl. 1). In order to ensure this limitation is met, a party must have standing. *Id.* ("Our standing doctrine accomplishes this by requiring plaintiffs to allege such a personal stake in the outcome of the controversy as to justify the exercise of the court's remedial powers on their behalf.") (internal quotation marks, citations, alteration marks committed).

> To establish Article III standing, the plaintiff seeking compensatory relief must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. Absent such a showing, exercise of its power by a federal court would be gratuitous and thus inconsistent with the Art. III limitation.

*Id.* at 438-39 (internal quotation marks and citations omitted).

While the Motion avoids stating whether Harper seeks to intervene as a plaintiff or as a defendant (a fatal flaw to intervention), Harper's Motion seeks protection of its water rights and

some undefined economic benefit from those water rights—both not at issue here. Harper, therefore, must have standing for the relief it seeks. *Town of Chester*, 581 U.S. at 439-440. Harper does not have standing because the Motion fails to argue that Harper has suffered an injury in fact, merely that an injury may occur to claimed interests not at issue in this case if certain terms are included in a settlement agreement. This alleged injury is merely speculative, and is not "concrete and particularized." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Similarly, Harper does not argue that its alleged injury is "fairly traceable" to the parties in this case, and "not the result of the independent action of some third party not before the court." *Id.* (internal quotation marks and citations omitted). Nor does Harper explain how this alleged injury would be "redressed by a favorable decision" of this court. *Id.* at 561 (internal quotation marks and citations omitted). Harper does not have standing and thus cannot intervene.

      **C.**      **Harper's speculation as to "possible outcomes" do not support intervention.**

Rule 24(a) states that intervention is supported when resolution of a suit "may as a practical matter impair or impede the movant's ability to protect its interest." Harper claims an interest in water rights from the Spring, and economic benefits from those water rights. But a ruling in favor of Plaintiffs—or Wagon Mound—in this litigation would *not* "impair or impede" Harper's ability to protect its interests. If Harper's ability to exercise its water rights was harmed or interfered with by some third party, Harper could request the OSE institute priority administration of water rights to ensure junior water rights appropriators were not diverting water to which Harper is entitled. *See* N.M. Const. Art. XVI, § 2 ("Priority of appropriation shall give the better right."). Or, Harper could file suit for damages against whomever it believes has negatively affected the economic benefits Harper claims to derive from its water rights. *See Bottoms v. Dresser Indus.,*

7

*Inc.*, 797 F.2d 869, 873-74 (10th Cir. 1986) (affirming denial of motion to intervene where settlement agreement did not affect right of putative intervenor to pursue its own claims allegedly arising out of the settlement agreement).

Perhaps recognizing this problem, the Motion sets forth a litany of wholly speculative outcomes—untethered from any allegation in the Complaint or Answer—that Harper believes could be the subject of a settlement conference that is scheduled for December 18, 2023. Motion 5. But a non-party should not be allowed to intervene based on concerns about a settlement agreement, when the non-party would still have the right to assert its own claims if, at some point in the future, Harper is harmed. *See Bottoms*, 797 F.2d at 873-74 (10th Cir. 1986).

Harper's sole reliance on *WildEarth Guardians v. U.S. Forest Service*, 573 F.3d 992 (10th Cir. 2009), Motion 4-5, is misplaced. In *WildEarth Guardians*, the federal agency defendants had entered a decision allowing Mountain Coal Company ("MCC") to mine a certain area. *Id.* at 994. That decision was challenged by WildEarth Guardians. *Id.* MCC moved to intervene. *Id.* at 995. The Tenth Circuit concluded MCC met its burden of proof because MCC had already started its mine expansion under the agency decision, and if the agency decision was reversed, MCC's efforts and funds expended to date would have been for naught, and MCC would have been prevented from enjoying the financial benefit had the mine opened. *Id.* at 995-96. In contrast, Harper does not identify how a ruling invalidating the Ordinance—or upholding it and granting Plaintiff's just compensation for the taking of their surface and mineral estates—would affect Harper's interests. Rather, Harper argues that potential outcomes *in settlement* could impair Harper's water rights and related contracts. Motion 5. But, as in *Bottoms*, if such an outcome were to occur in Harper's absence, Harper would be able to file suit against the party Harper believed caused the damage to

its interests. The outcome of this case would not "impair or impede" Harper's ability to "protect its interest." Fed. R. Civ. P. 24(a).

### D. Harper's interests are adequately represented by the Village.

Harper admits that its interests are "aligned" with the Village's, and that the Village "could be considered to represent Harper's interests, even in part . . . ." Motion 6. Where a putative intervenor has "identical litigation objectives" with an existing party, the existing party is presumed to adequately represent the intervenor's interests. *Tri-State Generation & Transmission Ass'n, Inc. v. N.M. Pub. Regul. Comm'n*, 787 F.3d 1068, 1073 (10th Cir. 2015). In order to overcome the presumption that the Village is unable to adequately represent Harper's interests, Harper would have to "make a concrete showing of circumstances that [the Village's] representation is inadequate." *Id.* (internal quotation marks and citations omitted). In *Tri-State*, the Tenth Circuit found the putative intervenor had made no such showing, in part because there was no evidence that the public entity defendant in that case "[would] not vigorously argue in favor of its statutory authority." *Id.* at 1074. Nor did the putative intervenor argue that "it possess particular expertise beyond that of the" public entity defendant. *Id.*

Harper relies on *WildEarth Guardians*, 573 F.3d 992, for the argument that a governmental entity cannot adequately represent the interests of individual members of the public. Motion 5-6. But as *Tri-State* demonstrates, there are exceptions to this rule—and the Village adequately represents Harper's interests here. The Motion presents no arguments or evidence that Defendants will "not vigorously argue in favor of [the Village's] statutory authority. *Tri-State*, 787 F.3d at 1074. Defendants adequately represent Harper's interests, and intervention is not warranted.

E.    **Harper's failure to propose a pleading is fatal to the request to intervene.**

In the Motion, Harper does not seek to intervene as a plaintiff or a defendant, but as an "Interested Third Party." Motion 3. Rule 24 does not contemplate "interested third party" intervention—indeed, such a rule is better suited to an *amicus curiae*—and expressly requires a putative intervenor to submit a proposed pleadings. Fed. R. Civ. P. 24(c).

"Rule 24(c) requires that one desiring to intervene in a pending cause shall serve a motion stating the grounds thereof, accompanied by a pleading setting forth the claims or defense for which intervention is sought, upon all the parties affected thereby." *Int'l Bhd. of Teamsters, Chauffeurs, Stablemen & Helpers of Am., Loc. Union No. 523, of Tulsa, Okl. v. Keystone Freight Lines*, 123 F.2d 326, 328 (10th Cir. 1941). "The purpose of the rule is not only to inform the court of the grounds upon which intervention is sought, but also to inform parties against whom some right is asserted or relief sought, so they may be heard before the court passes upon the application." *Id.*; *see also Serrano v. New Mexico*, No. 17-CV-01156-RB-SCY, 2018 WL 2723781, at *3 (D.N.M. June 6, 2018) ("In the absence of a proposed pleading setting out her claims, the Court cannot determine whether Ms. Serrano has the right to intervene, and, if not, whether permissive intervention should be granted.") (internal quotation marks and citations omitted).

Courts have excused the pleading requirement—but only where the motion to intervene identifies an existing pleading that it will adopt. *See United States v. Curry*, No. CV 10-1251 MCA/LFG, 2011 WL 13315500, at *2 (D.N.M. July 20, 2011) (excusing the failure to attach a pleading to the motion to intervene where the movant stated it had adopted the answer and counterclaim of one of the defendants, and included an affidavit regarding its claims). Here, Harper

10

did not submit a proposed pleading, and Harper's repeated discussion of its own water rights indicates that it does not adopt Defendants' Answer [Doc. 8], which makes no mention of Harper's water rights.

The Court should not allow Harper to intervene without setting forth a claim or defense. Harper's desire to be "an interested third party" in the litigation will merely complicate and confuse litigation and settlement efforts related to the allegations and defenses set forth in the pleadings of Plaintiffs and Defendants by injecting water rights and contractual issues. These issues could be better raised by Harper in another forum and are not properly raised in this case narrowly challenging a municipalities authority under a state statute. Harper's failure to comply with Rule 24(c)'s pleading requirement is fatal to its effort to intervene in these proceedings.

**IV.     Conclusion**

Harper's Motion to Intervene should be denied.

Respectfully submitted,

                         MODRALL SPERLING ROEHL HARRIS
                           & SISK, P.A.

By: */s/ Sarah Stevenson*
     Maria O'Brien
     Sarah M. Stevenson
     Jamie L. Allen
     P.O. Box 2168
     Albuquerque, New Mexico 87103-2168
     Telephone: (505) 848-1800
     Fax: (505) 848-9710
     mobrien@modrall.com
     sarah.stevenson@modrall.com
     jamie.allen@modrall.com
     *Attorneys for Yates Ranch Property LLP and JAY Land Ltd. Co.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 13, 2023, I filed the foregoing electronically through the CM/ECF system, which caused the parties or counsel of record to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

MODRALL, SPERLING, ROEHL, HARRIS
    & SISK, P.A.

By: */s/ Sarah Stevenson*
    Sarah M. Stevenson